St. Louis, *Trustee Under Will of* BRYAN MULLANPHY, v. WENNEKER, *Collector, Appellant.*

In Banc, June 25, 1898.

1. **Taxation**: PROPERTY HELD BY CITY AS TRUSTEE. Property held by the city of St. Louis as trustee, under a will devising it to the city for the benefit of a particular class, is not corporate property of the municipal corporation, and hence is not exempt from taxation by the Constitution of Missouri.

2. ———: REMOVAL OF TRUSTEE. A court of chancery, upon a proper showing, may remove the city as such trustee, and appoint some other person trustee in its stead.

3. ———: SPECIAL LEGISLATIVE PROVISION. Real estate held by the city of St. Louis "in trust to furnish relief to all poor emigrants on their way *bona fide* to settle in the West," can be taxed under the general laws of this State for the taxation of real estate, and no special legislation is needed before such property may be listed for taxation.

4. ———: NAME OF OWNER. Where property is held by the city of St. Louis as trustee for the benefit of a particular class, a municipal tax assessment thereof against the "Mullanphy Emigration Relief Fund" and the "Mullanphy E. R. Fund," will be held to have been illegally and improperly made, as not meeting the requirements of the statute which commands the assessment to be made in the name of the owner if known.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*B. Schnurmacher* and *Chas. Claflin Allen* for appellant.

(1) The property, which is the subject of the taxbills sought to be canceled, is not property of the city of St. Louis as a municipal corporation, and is, and ever since Bryan Mullanphy's death in 1851 has been, liable to taxation. It is as much liable as if Mr. Mullanphy, instead of appointing the city to execute the trust created by his will, had appointed some private individual as trustee. Art. X, secs. 6 and 7, Constitution; R. S. 1889, secs. 7503 and 7504; *Joyce Surveying Co. v. St. Louis,* 68 Mo. App. 189. (2) The fact that the property is used for charitable purposes does not exempt it from taxation, at least not more than one acre. R. S. 1889, sec. 7504. (3) The assessments and tax-bills levied and made out in the name of "Mullanphy Emigrant Relief Fund" and "Mullanphy E. R. Fund" are sufficient in form. *State ex rel. v. Burr,* 143 Mo. 209; Angell & Ames on Corp., sec. 645; 4 Am. & Eng. Ency. of Law, 204, notes 2 and 3, and 205, note 2; *The Souhegan, etc., Factory v. McConihe,* 7 N. H. 309; *Patchin v. Ritter,* 27 Barb. 34.

*Geo. E. Smith* and *G. A. Finkelnburg* for respondent.

(1) The property described in the tax-bills in controversy is, and ever since 1865 has been, expressly exempt from taxation in this State. The present Constitution provides that the property, real and personal, of this State, counties and other municipal corpora-

tions, shall be exempt from taxation. Constitution 1875, art. X, sec. 6; Constitution 1865, art. XI, sec. 6. The statutes provide that "lands and other property belonging to any city, county or other municipal corporation in this State" shall be exempt from taxation. R. S. 1889, sec. 7504, fourth subdivision; G. S. 1865, p. 95, sec. 2. (2) The title to the property in controversy is in the city of St. Louis. It holds the same in trust for a public use which has been declared by this court to be germane to the purposes for which the city of St. Louis was created, and that the public use expressed in the bequest promotes the objects for which the city was incorporated. *Chambers v. St. Louis,* 29 Mo. 453; 2 Dillon, Mun. Corp. [4 Ed.], sec. 773; *West Hartford v. Board of Water Comm'rs,* 44 Conn. 360; *People v. Doe,* 36 Cal. 220; *Directors of the Poor v. School Directors,* 42 Pa. St. 21; *Chicago v. People ex rel.,* 80 Ill. 384; *Buckley v. Osburn,* 8 Ohio, 180; *Inhab. of Worcester v. Mayor, etc.,* 116 Mass. 193; *People v. Brooklyn Assessors,* 111 N. Y. 505; *Water Comm'rs v. Gaffncy,* 34 N. J. Law, 133; *Railroad v. Davenport,* 51 Iowa, 451; *Railroad v. Taylor Co.,* 52 Wis. 37; *Andrews v. Auditor,* 28 Gratt. 115; *Tulane Educa. Fund v. Board of Assessors,* 38 La. Ann. 292; *Bannon v. Burns,* 39 Fed. Rep. 892; *St. Louis v. Gorman,* 29 Mo. 593. (2) The tax-bills in controversy are void because the property therein described has never been subjected to taxation by the General Assembly. Even when the Constitution permits taxation of certain classes of property it can not be assessed for taxation unless the General Assembly has actually subjected it to taxation. *Valle v. Ziegler,* 84 Mo. 214; *State v. Railroad,* 77 Mo. 202; *Carondelet v. Picot,* 38 Mo. 125; *Railroad v. Apperson,* 97 Mo. 300; *McPike v. Pen,* 51 Mo. 63; Dillon, Mun. Corp., sec. 773. (3) The tax-bills in question are void because the property therein described has not been assessed

in the manner required by law.  Our revenue laws require that all assessments should be made against the owner of the property.  R. S. 1889, secs. 7569, 7553, 7555, 7608 and 7682; *Hubbard v. Gilpin*, 57 Mo. 441; *Gains v. Fender*, 82 Mo. 497; *Gitchell v. Kreidler*, 84 Mo. 476; *Cowell v. Gray*, 85 Mo. 169; *Allen v. Ray*, 96 Mo. 542; *Crane v. Dameron*, 98 Mo. 567; *Hilton v. Smith*, 134 Mo. 499.

WILLIAMS, J.—The city of St. Louis, as trustee under the will of Bryan Mullanphy, deceased, instituted this proceeding in equity to prevent the enforcement of, and to procure a decree canceling certain tax-bills against real estate, constituting part of the trust property.

Mullanphy died in said city on the fifteenth of June, 1851.  He gave to the city of St. Louis by his will, one third of all his property, real, personal and mixed, *"in trust to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way bona fide to settle in the West."*  The city accepted the trust by an ordinance approved November 16, 1857.  The real estate was partitioned, and plaintiff's share under the will set off by metes and bounds.

The petition alleges "that since the year 1865 all the property thus owned by the plaintiff was expressly exempted by the Constitution and laws of the State of Missouri from taxation.  Yet, notwithstanding such exemption, the assessor of the city of St. Louis did pretend to assess said property for taxation from time to time for the years and in the manner hereinafter more fully shown, and did deliver the pretended tax-bills evidencing such pretended assessments to the defendant and his predecessors in office so that the same are now all held by the defendant as such collector, and the defendant threatens to enforce the same as liens

against the property hereinafter described.'' The petition then states that said tax-bills are void for the following reasons: ''That they are assessed against property which, by the Constitution and laws of the State, at the date of the assessment, was wholly exempt from taxation;'' and ''that they are assessed either against the 'Mullanphy Emigrant Relief Fund' or against the 'Mullanphy E. R. Fund,' whereas there is not and was not at the date of such assessment any person, natural or artificial, known by that name, but that the name of such pretended owner as contained in such tax-bills is a mere abstraction.'' A full description of the tax-bills is given, and the prayer is, that defendant be enjoined from enforcing them, and that they be canceled.

The defendant demurred on the ground that the petition failed to state facts sufficient to constitute a cause of action. This was overruled and a decree entered as prayed, and defendant has brought the case here.

I.   The first question for decision arises out of the claim that this property is exempt from taxation. This involves a construction of the constitutional provisions on that subject.

Sections 6 and 7 of article X of the Constitution of this State adopted in 1875, are as follows:

''Sec. 6. *Property exempt from taxation.*—The property, real and personal, of the State, counties and other municipal corporations, and cemeteries, shall be exempt from taxation. Lots in incorporated cities or towns, or within one mile of the limits of any such city or town, to the extent of one acre, and lots one mile or more distant from such cities or towns to the extent of five acres, with the buildings thereon, may be exempted from taxation, when the same are used exclusively for religious worship, for schools, or for purposes purely

charitable; also, such property, real or personal, as may be used exclusively for agricultural or horticultural societies—*provided*, that such exemptions shall be only by general law.

"Sec. 7. *Other exemptions void.*—All laws exempting property from taxation, other than the property above enumerated, shall be void."

It is plain that the framers of the Constitution did not intend to permit property regardless of its amount to be relieved from taxation simply because of its use for charitable purposes. A restriction is placed upon the exemptions that may be made upon that ground. Lots in incorporated cities and towns, or within one mile of the limits thereof, to the extent of one acre, and lots one mile or more from such limits to the extent of five acres "when the same are used . . . . . . . for purposes purely charitable" may be exempted by general law. There is an express prohibition against the exemption of any other property than that specifically enumerated. The real estate in question here greatly exceeds the limits above mentioned. It is not claimed, nor indeed can it be, that it can escape taxation under the constitutional provision set out above, because of the use to which it is devoted under the Mullanphy will.

Section 6, *supra*, in terms directs that property of the State and of counties and other municipal corporations, shall be non-taxable. Immunity is claimed for this real estate *solely* under that provision. It is said that it is the property of the city of St. Louis and hence is exempt.

The legal title is unquestionably in said city, but it remains to be determined whether it is the property of the city within the meaning of the above section of the Constitution. It is certainly not held by it in the same manner or in the same right as its general corporate property. The devise is to it as *trustee*. The gift

is not to the city of St. Louis. A trust is created for the benefit of a particular class, and the testator selected the city to execute it. Any other trustee might with equal propriety have been chosen and, in carrying out the provisions of the will, such trustee would not have been assuming any municipal function or interfering with the property of said city. A court of chancery might even yet, in a proper case, and, upon a proper showing, remove the trustee. "A court of chancery is vested with the same jurisdiction over corporate trusts which it ordinarily possesses and exercises over other trust estates. . . . . The choice of trustees is a matter of judgment and the devisor of the trust has in the exercise of that judgment preferred an artificial to a natural person. Both, *as trustees*, are equally liable to animadversion and control of the courts." *Chambers v. City of St. Louis*, 29 Mo. *loc. cit.* 578. The city however could not thus be deprived of *its* property, viz., that of which it was the rightful and real *owner*.

Again, this court has recognized the fact that said real estate is not the "property of the city of St. Louis" in the usual and ordinary meaning of these words. It was said in *Chambers v. The City of St. Louis, supra*, in discussing the power of said city to take under Mullanphy's will: "The question whether the city can take the land in trust is a compound one, and involves, *first*, the inquiry whether, under her charter, she can take the land; and, *secondly*, although she may have the capacity to take it *purely as a gratuity, or for her own use*, yet whether she can take and hold it for the object mentioned in the testator's will, *thereby making herself a trustee in respect to it*." "It is not denied but that the city under her charter could take all the lands devised to her within her limits, *if the devise had been to her own use*, uncoupled with the trust to which by the terms of the devise, it was subjected." "The next

question in order is, whether the city, even admitting that she can hold the lands outside of her limits *for her own use and in her own right* can become a *trustee* of them for the *benefit of others.*" The trust, too, was not created solely for the benefit of those who might, at the time, be charges upon the city; nor is the relief to be accorded confined to such amounts as otherwise might properly be appropriated therefor from public funds.

The reason for exempting from taxation property of the State and its municipalities is plain. Judge Cooley in his work on Taxation [2 Ed.], p. 172, expresses it thus: "All such property is taxable if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself." This reason does not exist for excluding from the tax books the Mullanphy real estate. The city, *as trustee*, can only use the property for the *class* and in the manner designated in the will. It can not be applied by said city to its own benefit, or for municipal purposes.

The argument of respondent concedes that if the property was held in trust by an individual or a private corporation, it would be subject to taxation. We can not think that a different rule should prevail on the *sole* ground that a municipal corporation is the *trustee.* The Constitution should not be construed to exempt real estate held *in trust* by a *city*, and to require the taxation of that held by the same title, and upon the same trusts by an individual trustee.

The legislature (Session Acts 1897, p. 59) has conferred power upon each county of the State to receive property in trust for charitable uses, and to act as trustee in such cases. Respondent's contention would exempt such property in the hands of the county, but

subject it to taxation, if held for the same purpose, by any other trustee.

Only lots to the extent of one acre in incorporated cities and towns and to the extent of five acres in country districts can be relieved from taxation, under the Constitution, on the ground of the use thereof for charitable purposes (art. X, sec. 6 of Constitution, *supra*). An easy way of escaping this prohibition exists, if respondent's theory should be adopted. It will then be only necessary to make the county *the trustee* and the exemption will follow, regardless of the number of acres so held by it.

We think that the property of a county or city exempted from taxation by the constitutional provisions hereinbefore quoted, is that of which such county or city is the beneficial owner, which is held by it "for its own use" and not merely in trust. It does not include that in which the only interest of the municipality is as *trustee*. We therefore hold that this real estate is not exempt from taxation.

II. The point is made that the tax-bills are void because the property therein described has never been subjected to taxation by the General Assembly. In other words, that there is no statute providing for its assessment and directing the manner thereof. Neither, it is said, is there any procedure marked out for the enforcement of the tax lien. If the premises are correct, the conclusion necessarily follows, that the tax-bills are invalid.

The legislature must provide for the taxation of property. The "ways and means" for the assessment thereof must be prescribed by law. Omissions in that behalf can not be supplied by the courts. *Kansas City v. Mercantile Mutual B. & L. Association, ante,* p. 50; *Valle v. Ziegler,* 84 Mo. 214; *State v. Railroad,* 77 Mo. 202.

The revenue laws direct the assessment and taxation of all *real estate* not exempt therefrom. These provisions are broad enough to include this property, if an individual was the trustee. When we hold that it stands upon no different footing, so far as taxation is concerned, simply because the city occupies that position, we necessarily affirm that the revenue laws apply to this real estate. It does not stand upon the same plane as a class or species of property, which *might* be taxed, but for the assessment for which no provision has been made. The general laws direct the assessment of real estate. There is no reason for requiring a special act applicable to this property. It can be assessed just as it would be if there was a different trustee. *State ex rel. v. Burr*, 144 Mo. 209.

III. Lastly, respondent objects that the assessments were not legally or properly made. The property in some instances was assessed to and the tax-bills made out against the "Mullanphy Emigrant Relief Fund" and in others the "Mullanphy E. R. Fund."

The statutes require the assessment to be made in the name of the owner if known, and if not known, the name of the original patentee, grantee, or purchaser from the Federal Government, must be given upon the assessor's books. This forms the foundation of the proceedings against the owner to enforce the tax and foreclose the lien therefor. 2 R. S. 1889, secs. 7553, 7555, 7562, etc.; *Hubbard v. Gilpin*, 57 Mo. 441; *Abbott v. Lindenbower*, 42 Mo. 162. It can not be pretended that the trustee was unknown.

A legal assessment is a prerequisite to a valid tax. "There is a general concurrence of authority that, when the statute provides for the assessment of occupied lands to the owner or occupant, the requirement that it shall be so assessed is imperative." Cooley on Taxation [2 Ed.], p. 396. It is true that it

has been held that a slight change in the corporate name will not vitiate the assessment. *Souhegan Factory v. McConihe*, 7 N. H. 309. An individual also may be proceeded against by the name under which he does business, and by which he is known. *Patchin v. Ritter*, 27 Barb. 34. These cases cited by appellant do not meet the question for determination here.

There was no attempt in the case at bar to make the assessment in the name of *any* individual or corporation. Neither the real name nor any appellation by which the corporation is known is given in the assessment or tax-bills. It is evident that it was not *intended* to give *any such name*. We must therefore hold that the tax-bills are void. Hence the demurrer was properly overruled, and the judgment must be affirmed. It is so ordered. GANTT, C. J., and SHERWOOD, BURGESS, ROBINSON and BRACE, JJ., concur. MARSHALL, J., having been of counsel took no part in the decision.